### OWENSBORO DITCHER & GRADER CO. v. LUCAS, Collector of Internal Revenue.

District Court, W. D. Kentucky. April, 1927.

1. **Constitutional law** ⟨⟩80(2), 286—**Internal revenue** ⟨⟩2(3)—**Statute authorizing Commissioner of Internal Revenue to assess and collect liability at law or in equity of transferee of property of taxpayer in respect of tax held unconstitutional, as denial of due process, and improper attempt to vest judicial power in Commissioner (Revenue Act 1926, § 280; Const. Amend. 5; Const. art. 3, § 1).**

Revenue Act 1926, § 280 (44 Stat. 61), authorizing the Commissioner of Internal Revenue to assess and collect the liability at law or in equity of a transferee of property of a taxpayer in respect of the tax imposed on taxpayers, *held* a denial of due process of law, in violation of Const. Amend. 5, and an attempt to vest judicial power in the Commissioner of Internal Revenue, in violation of Const. art. 3, § 1.

2. **Internal revenue** ⟨⟩28(3)—**Taxes may be collected without giving taxpayer right to resort to courts prior to payment.**

Taxes, as such, may be assessed against and collected from taxpayer by an administrative body, without giving the taxpayer any right to resort to the courts prior to the payment of the tax.

3. **Internal revenue** ⟨⟩7(2), 9(1)—**Income and profits taxes are directed against taxpayer, and not his property (U. S. C. tit. 26, § 115).**

In view of U. S. C. tit. 26, § 115 (Rev. St. § 3186; Comp. St. § 5908), income and profits taxes are personal obligations of the taxpayer, directed against him and not against his property.

**4. Internal revenue ⬅⬆28(3)—Liability of transferee of taxpayer's property as respects tax is not "tax," within statute prohibiting suit to restrain assessment or collection (Revenue Act 1926, § 280; Comp. St. § 5947).**

Liability at law or in equity of a transferee of property of a taxpayer in respect of the tax involved in Revenue Act 1926, § 280, is not a "tax," within the meaning of Rev. St. § 3224 (Comp. St. § 5947), prohibiting any suit for the purpose of restraining the assessment or collection of any tax.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Tax— Taxation.]

**5. Internal revenue ⬅⬆28(3)—Transferee of taxpayer's property held entitled to injunction restraining Commissioner of Internal Revenue from proceeding under statute to enforce liability (Revenue Act 1926, § 280).**

Transferee of property of taxpayer, against whom deficiency assessments of income and profits taxes had been made, *held* entitled to equitable relief by injunction against enforcement of liability by Commissioner of Internal Revenue, acting under Revenue Act 1926, § 280.

In Equity. Suit by the Owensboro Ditcher & Grader Company against Robert H. Lucas, Collector of Internal Revenue for the district of Kentucky. Decree for plaintiff.

Sandidge & Sandidge, of Owensboro, Ky., for plaintiff.

Thos. J. Sparks, U. S. Dist. Atty., of Greenville, Ky., and A. W. Gregg, Gen. Counsel Bureau Internal Revenue, and I. R. Blaisdell, Sp. Atty. Internal Revenue, both of Washington, D. C., for defendant.

Elwood Hamilton, of Louisville, Ky., amicus curiæ.

DAWSON, District Judge. This suit involves the constitutionality of section 280 of the Revenue Act of 1926 (44 Stat. 67), which, among other things, authorizes the Commissioner of Internal Revenue to assess and collect, in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax, "(1) the liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title or by any prior income, excess profits, or war profits tax act," and also involves the right of a transferee of the property of a taxpayer to enjoin the collection by distraint of such assessed liability.

The bill, as amended, states that in the month of August, 1920, the plaintiff, Owensboro Ditcher & Grader Company, a Kentucky corporation, purchased from the Simplex Farm Ditcher Company, a Kentucky corporation, all the assets of the latter company, and gave in payment thereof $95,000 par value of the capital stock of the plaintiff company; that at the time and in the manner provided by law the Simplex Farm Ditcher Company made and filed with the collector of internal revenue for the district of Kentucky its return for income and profits taxes due the United States government for the calendar year 1919, under the acts of Congress then in force; that this return showed that the taxpayer had sustained a loss for that year, and that therefore no tax was due; that the Commissioner of Internal Revenue, in the month of July, 1923, and almost three years after all the assets of the taxpayer had been transferred to the plaintiff in this case, made a deficiency assessment of income and profits taxes for the year 1919 in the sum of $2,266.40 against the taxpayer, Simplex Farm Ditcher Company, and in regular course demanded payment thereof; that at the time and in the manner provided by law the Simplex Farm Ditcher Company made and filed with the then collector of internal revenue for the district of Kentucky its return, as required by the acts of Congress then in force, for income and profits taxes for the year 1920, this report likewise showing that the taxpayer had sustained a loss in the conduct of its business during the calendar year 1920, and that therefore no tax was due for that year; that in the month of May, 1925, almost five years after the sale of its assets, as heretofore stated, the Commissioner of Internal Revenue made a deficiency assessment against the Simplex Farm Ditcher Company in the sum of $15,034.46, on account of income and profits taxes for the year 1920, and that demand for the payment of this amount, together with $1,217.79 interest, was regularly made on the Simplex Farm Ditcher Company by the collector; that on the 2d day of August, 1926, the plaintiff was notified by the Commissioner of Internal Revenue that under authority of section 280 of the Revenue Act of 1926 he proposed to assess these taxes and interest thereon against plaintiff as the transferee of the property of the taxpayer, Simplex Farm Ditcher Company; that the plaintiff failed to avail itself of the privilege of a hearing before the Board of Tax Appeals, and that in due time these taxes and the interest thereon were assessed against the plaintiff as a liability on its part as the transferee of the property of the taxpayer, Simplex Farm Ditcher Company, and payment thereof was demanded; and that the defendant, as collector of internal revenue, is threat-

ening to and will, unless enjoined and restrained, issue distraint warrants against plaintiff's property and sell same, in satisfaction of the amounts claimed to be due by this plaintiff.

The bill charges that section 280 of the Revenue Act of 1926, under which the Commissioner of Internal Revenue and the defendant acted and are acting, is violative of the Fifth Amendment to the Constitution of the United States, in that it deprives plaintiff of its property without due process of law, and of the Seventh Amendment to the Constitution of the United States, in that it deprives plaintiff of its right to a trial by jury, and of section 1 of article 3, in that it undertakes to vest judicial power in the Commissioner of Internal Revenue. As a basis of equitable jurisdiction, it is alleged that plaintiff has not sufficient money with which to pay these claims, and to borrow same would impair its credit; that the property which the defendant is threatening to sell is real estate, used and necessary for use in the plaintiff's business, and that the threatened acts of the defendant cast a cloud upon its title; that there is no demand in the city where its property is located for that character of property, and, if sold, it would be at a great sacrifice, and would cripple and injure plaintiff's business; that it has no adequate remedy at law, and that it will suffer irreparable injury unless the defendant is enjoined from levying upon and selling its property.

The defendant filed a motion to dismiss the bill upon several grounds, but the court is of opinion that only three questions are necessary to be considered: (1) The constitutionality of section 280 of the Revenue Act of 1926. (2) Is the court prohibited from granting an injunction by section 3224 of the Revised Statutes of the United States (Compiled Statutes, § 5947), which provides that no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court? (3) Has the plaintiff an adequate remedy at law?

[1, 2] That section 280 of the Revenue Act of 1926, if enforced, as the bill alleges is threatened to be done in this case, will result in denying to the plaintiff due process of law within the meaning of the Fifth Amendment to the Constitution of the United States, seems too obvious for extended discussion, and in reaching this conclusion I am not unmindful of the rule that taxes, as such, may be assessed against and collected from the taxpayer by an administrative body, without giving the taxpayer any right to resort to the courts prior to the payment of the tax.

The legislative department has the undoubted right to levy a tax, and commit to a nonjudicial body the duty of assessment and collection, and if, at any stage of the procedure, the taxpayer is given the right to be heard by the authority charged with the assessment and collection thereof, he has not been denied due process of law. The plaintiff's liability, however, if any, which the defendant, under section 280, is seeking to enforce, does not grow out of nor flow from any of the provisions of the Revenue Act of 1926, nor from any other statute of the United States. The Revenue Act of 1926 undertakes in no way to define the measure of the liability of the transferee of the property of a taxpayer for the tax primarily due by the taxpayer, or to lay down any rule by which it may be determined. No revenue statute, so far as the court is advised, has ever undertaken so to do. So far as the court is advised, the liability of one who has had transferred to him the assets of a taxpayer before the government lien attached has always been worked out under general legal and equitable principles, or as the result of some local rule of property in the jurisdiction where the transferred property is located. The Revenue Act of 1926, in so far as measuring this liability is concerned, is no departure from what has been the general practice in the past. The act of 1926 simply recognizes that in given cases this liability, under settled principles of law and equity, and sometimes under local rules of property, exists, and it undertakes to leave to the Commissioner to determine in each case if such liability does exist, and, if so, to fix the extent thereof and to enforce its collection.

[3] In considering this question it is well to remember that the taxes sought to be collected in this case are personal obligations of the taxpayer, directed against the taxpayer, and not against his property. Under section 115, title 26 U. S. C. (Revised Statutes, § 3186; Comp. St. § 5908), the government, as against the taxpayer, has no lien upon his property except from the time the assessment list is received by the collector, and, as against a mortgagee or purchaser, until notice of such lien has been filed by the collector in the office of the clerk of the District Court in the district within which the property subject to such lien is situated, and in the office of the proper clerk or recorder of deeds. Therefore, in those cases where the government is seeking to recover taxes due by a taxpayer from a purchaser of his property, who became such before the attaching of the lien, it occupies the same position as any other pursuing creditor, and its rights are worked out upon the

same legal and equitable principles as obtain in cases of other general creditors, and not under the tax statute which determines the primary liability of the taxpayer.

Prior to the enactment of section 280 of the Revenue Act of 1926 these rights had always been determined by the judicial department, and not by the executive department. The extent and nature of the power attempted to be conferred upon the Commissioner by section 280 of the act in question, and the radical departure from the settled practice in such cases which would be brought about by the application of this section, perhaps can be best illustrated by enumerating some of the instances in which in the past it has been held that the transferee of the property of a debtor may be held liable for the debts of him from whom the property was received, and by an examination of the method by which this liability has always been determined and enforced.

If A. transfers property to B., under a contract by which B. agrees to pay certain debts of A., the holders of these debts could bring an action at law against B. on his contract as one made for their benefit. Such legal liability, however, it has always been understood, could only be enforced in a suit in a court of competent jurisdiction, and in such suit B. could certainly plead any defense personal to himself, such as non est factum, offset, counterclaim, etc., and on these defenses, under the settled practice, he has always been entitled to a judicial hearing, with trial by jury, where the amount exceeded $20.

If a corporation distributes its property to its stockholders, without paying its debts, in a suit in equity brought for that purpose, a stockholder could be made to answer for these debts to the extent of the value of the corporate assets received by him, and in such suit, before the stockholder's property could be subjected to the payment of the corporate debts, he has always been entitled to his day in court and a hearing upon such questions, as whether the judgment is void or voidable for want of jurisdiction or fraud, whether he is a stockholder and indebted, whether he received any of the assets of the corporation, the value thereof when received, and other defenses personal to himself. Coe v. Armour Fertilizer Works, 237 U. S. 413, 35 S. Ct. 625, 59 L. Ed. 1027; Great Western Telegraph Co. v. Purdy, 116 U. S. 329, 16 S. Ct. 810, 40 L. Ed. 986; Bernheimer v. Converse, 206 U. S. 516, 27 S. Ct. 755, 51 L. Ed. 1163; Converse v. Hamilton, 224 U. S. 243, 32 S. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D, 1292.

Again, in case A. transfers his property

to B. without consideration, B. could be held liable in a proper judicial proceeding for the debts of A. existing at the time of the transfer, to the extent of the property received by him, upon the theory of implied contract; but certainly B. has always been entitled to have judicially determined the validity of the debt, whether the transfer was without consideration, the value of the property transferred, and to interpose and have judicially determined other pertinent defenses.

Liabilities such as those herein enumerated are the liabilities referred to in section 280, and heretofore have always been enforced by judicial proceedings. The matters involved are essentially judicial in character, and Congress is without power to withdraw them from judicial cognizance and confer them upon the executive department, and the attempt in section 280 so to do amounts not only to a denial of due process of law, but also is violative of section 1 of article 3 of the Constitution, which vests the judicial power of the United States in one Supreme Court and in such inferior courts as Congress may from time to time ordain and establish.

[4] The defendant contends, however, that, conceding the unconstitutionality of section 280, section 3224 of the Revised Statutes forbids the court to entertain this action. Section 3224, Revised Statutes, provides: "No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

If the liability sought to be enforced against the plaintiff in this case, under section 280, is a tax within the meaning of section 3224, then of course this suit cannot be maintained, notwithstanding the unconstitutionality of the law imposing it. I cannot agree, however, with the contention of the defendant that the liability sought to be enforced against the plaintiff in this case is a tax within the meaning of section 3224. I cannot escape the conclusion that the tax referred to in that section is the primary liability imposed by the lawmaking body upon the citizen subject to the tax, and not a liability arising out of the relationship of a third party to the original taxpayer or to his property. The liability of the taxpayer as such grows out of his relationship to the government. It is an enforced contribution imposed upon him or his property for the support of the government. It is not based upon any contract, nor is it the result of any voluntary obligation assumed by him. When the government undertakes to collect this liability, however, from a third party against whom it was not originally assessed, the liability arises from entirely

different considerations. The liability of such a person is a contractual one, either express or implied. If he contracts with the taxpayer to pay the tax, the government's right to proceed against him is upon the theory that the contract was made for its benefit. If he receives property from the taxpayer without paying therefor, or under such conditions as in good conscience would require it to be devoted to paying the obligations of him from whom it was received, then the law implies a promise on his part to pay.

The express contract or the implied contract may be to pay the entire obligation of the taxpayer, or it may be for such a part thereof as he agreed to pay, or in equity and good conscience he should be required to pay; but in no sense can it be said to be a tax, as that term is ordinarily understood. The amount for which he is liable is fixed and determined by none of the principles called into play in determining the primary liability of the taxpayer, but upon principles which have no relation to the tax law under which the primary liability arises. The obligation of such third party is a debt, founded upon contract, express or implied, rather than a tax, and to hold that this debt may be assessed and collected by a ministerial officer, through the application and determination by him of legal and equitable principles, and that before the taxpayer can be heard in court he must raise the money and pay the amount thus assessed, would be to place a most unreasonable construction upon section 3224, and to attribute to it a meaning which I cannot believe was in contemplation of Congress.

The mere fact that the defendant claims his authority in this case under a taxing statute is not a sufficient basis for applying section 3224. If it once be conceded that section 3224 operates as a prohibition against third parties, from whom it is sought to collect a tax primarily due by another, as well as a prohibition against the one primarily liable, then its application is unlimited. The collector could distrain and levy upon the property of B. to pay a tax owing by A., and B. would be compelled to pay the tax and then sue for its recovery, although he may have been under no legal or equitable obligation to pay any portion of same. Certainly no such application could reasonably be given to section 3224. Long v. Rasmussen (D. C.) 281 F. 236. Yet the obligation sought to be enforced in the suppositious case would be as much a tax as is the liability sought to be imposed in this case. This illustration but reinforces my conclusion that the only reasonable construction to be given to section 3224 is that it is an inhibition against the taxpayer alone, and not against a third party whose liability for his tax arises out of considerations independent of the taxing statute involved. I therefore conclude that section 3224 of the Revised Statutes does not prohibit the maintenance of this suit.

[5] It seems to me apparent that, with this section out of the way, the plaintiff's bill presents a cause properly cognizable in equity. Lipke v. Lederer, 259 U. S. 557, 42 S. Ct. 549, 66 L. Ed. 1061. Counsel may therefore prepare a decree, making the preliminary injunction heretofore granted in this case perpetual.