## LYONS et al. v. EAGLE–PICHER LEAD CO. et al.
### No. 1521.

Circuit Court of Appeals, Tenth Circuit.
May 27, 1937.

.Laurence A. Knapp, of Washington, D. C. (Charles Fahy, Robert B. Watts, and John J. Babe, all of Washington D. C., on the brief), for appellant.

A. C. Wallace, of Miami, Okl. (A. Scott Thompson, of Miami, Okl., and John H. Flanagan, Jr., of Carthage, Mo., on the brief), for appellees.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

On March 25, 1936, certain Locals of the International Union of Mine, Mill & Smelter Workers filed a charge with the National Labor Relations Board alleging unfair labor practices affecting interstate commerce in violation of the National Labor Relations Act of 1935[1] by the Eagle-Picher Lead Company and the Eagle-Picher Mining & Smelting Company.[2]

On May 5, 1936, the Board issued its complaint against the Companies in which it alleged: That the Mining Company is a Delaware corporation engaged in the business of mining lead and zinc ores and smelting and refining lead and zinc concentrates and secondary lead bearing materials; that it owns and operates lead and zinc mines in Missouri, Kansas and Oklahoma; that it engages in mining and concentrating gold, silver, lead and zinc ores at Ruby, Arizona; that it owns and operates mines of barytes at Mineral Point, Missouri; that it owns and operates a mill at Picher, Oklahoma, in which it mills the ores from its mines; that it owns and operates a plant at Galena, Kansas, in which it smelts lead concentrates and secondary lead bearing materials and manufactures pig lead, sublimed white and sublimed blue lead; that it operates a smelter plant at Henryetta, Oklahoma, where it smelts concentrates and produces slab zinc; and that in the course of such operations it causes lead and zinc ores and concentrates and pig lead, and sublimed white and blue lead to be transported in interstate commerce.

In its complaint the Board further alleged that the Lead Company is an Ohio corporation; that it owns all the common stock of the Mining Company; that the Lead Company is engaged in the business of smelting and refining secondary lead bearing materials, the production, sale and distribution of lead and zinc paint pigments, storage batteries, oxides, plumbers' lead goods, insulating materials, and white, red and blue lead in oil; that it manufactures lead oxide at Newark, New Jersey, lead oxides, plumbers' lead goods and insulating material at Joplin, Missouri, lithopone at Argo, Illinois, plumbers' lead goods, lead carbonate and white, blue and red lead in oil at Cincinnati, Ohio, and plumbers' lead goods at Chicago, Illinois; that it owns and operates a lead oxide and secondary smelting plant and a lead carbonate plant at East St. Louis, Illinois; that it owns and operates a plant for the manufacturing of zinc oxide and sulphuric acid at Hillsboro, Illinois; that it warehouses its principal products at Chicago, Illinois; and that in the course of such operations it causes lead and zinc and other raw materials to be purchased and transported in interstate commerce and causes lead products produced by it to be sold and transported in interstate commerce.

In its complaint the Board further alleged that the Companies are engaging in unfair labor practices in violation of the National Labor Relations Act affecting commerce as defined in that act, the details of which are not here material.

The Board caused the complaint and written notice of a hearing to be had thereon at Miami, Oklahoma, on May 21, 1936, to be served on the Companies. Thereafter the Companies brought this suit against the Board and its individual members, the trial examiner designated to conduct such hearing, and George Pratt, attorney for the Board, seeking a temporary and permanent injunction against the prosecution of the complaint and the enforcement of the National Labor Relations Act against the Companies. Service was had only on Pratt and Lyons.

The bill of complaint admitted that the scope and nature of the business carried

---

[1] Act of July 5, 1935, 49 Stat. 449, 29 U.S.C.A. §§ 151–166.

[2] Herein referred to collectively as the Companies and individually as the Lead Company and the Mining Company, respectively.

on by the Lead Company and the Mining Company were as specifically alleged in the Complaint of the Board but denied that the Companies were engaged in interstate commerce and alleged that each of their several operations were independent and were carried out wholly within the limits of a state.

A hearing was had on the application for a temporary injunction. The trial court found that the mining, smelting and manufacturing operations of the Companies do not constitute and do not affect interstate commerce and granted a temporary injunction.

From the order granting the temporary injunction, Lyons, trial examiner and Pratt, attorney for the Board, have appealed.

■ The evidence at the hearing showed that the production of raw materials, the processing and manufacture thereof and the sale and distribution of the finished products are carried on by the Companies as an integrated business enterprise; that the raw materials are mined or purchased and transported across state lines where they are processed and manufactured; that partially processed materials are transported across state lines to other plants where the processing and manufacture thereof is completed; that the manufactured products are in part concentrated at a central warehouse at Chicago and that they are advertised, sold and distributed throughout the United States and foreign countries.

It further established that the suspension of any one of the three principal operations, the mining, the smelting and refining, and the manufacturing, by industrial strife would greatly curtail, and probably force a suspension of the others and would have a serious effect upon the flow of interstate commerce between the points of the several operations and from the point where the finished product is produced, into the channels of trade.

Since the decision of the trial court, the Supreme Court has construed the National Labor Relations Act and sustained its validity. National Labor Relations Board v. Jones & Laughlin Steel Corporation, 57 S.Ct. 615, 81 L.Ed. ——, National Labor Relations Board v. Friedman-Harry Marks Clothing Company, 57 S.Ct. 645, 81 L.Ed. —— (decided April 12, 1937).

We conclude that the Board was proceeding within its lawful powers and that the temporary injunction should not have been granted.

■ We further conclude that the bill is without equity and that the Companies are not entitled to the relief sought. It follows, notwithstanding this is an appeal from an order granting a temporary injunction, that this court has power to consider the case on its merits and direct a dismissal of the bill. Boynton v. Fox West Coast Theatres Corporation (C.C.A.10) 60 F.(2d) 851, 855; Alexander v. Mid-Continent P. Corporation (C.C.A.10) 51 F.(2d) 735, 736; Consolidated Cement Corporation v. Pratt (C.C.A. 10) 47 F.(2d) 90, 93.

The cause is remanded with instructions to vacate the temporary injunction and dismiss the bill at the cost of the complainants.